IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Martin Walter Lucas, #271076, ) | |
| ) | CIVIL ACTION NO. 9:10-0017-CMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Jon Ozmint, Director of the S. C. Dept. of ) | |
| Corrections; John Doe; Jane Doe; ) | |
| Timothy Riley, Acting Warden of Perry ) | |
| Correctional Institute; and Ms. Merchant, ) | |
| Mail Room Supervisor for Perry ) | |
| Correctional Institute, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 7, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 12, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on



November 19, 2010.

The motion for summary judgment is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on June 30, 2008, he was notified by the Defendant Merchant (mail room supervisor) that a decision had been made to withhold and restrict as contraband some of Plaintiff's mail because of alleged "computer scanned photographs" of the Plaintiff's children and grandchildren. Plaintiff alleges that he was advised that these photographs were unsuitable for inmate possession pursuant to SCDC policies PS-10-08, OP-22.03, and OP-22-35. Plaintiff alleges that these policies amount to "over broad mail censorship" which serve no legitimate and rational penologic interest. Plaintiff alleges that as part of the grievance he thereafter pursued, he further complained about being unable to subscribe to "innocuous over-the-counter publications from authorized publishers and venders", citing to such magazines as Maxim, GQ, Saltwater Sportsman, and Sports Illustrated. Finally, Plaintiff also complains about the role the "Publication Review Committee" plays in deciding what publications inmates can receive. Plaintiff seeks injunctive and/or declaratory relief, as well as "compensation order". See generally, Plaintiff's Complaint, with attached exhibits [grievance documents].

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



In support of summary judgment in the case, the Defendant Nancy Merchant has submitted an affidavit wherein she attests that she works at the mail room at the Perry Correctional Institution (PCI), where Plaintiff is housed. Merchant attests that on April 18, 2008, she sent out a memorandum to inmates concerning changes in Policy PS10.08 (Inmate Correspondence Privileges) effective May 1, 2008. See also, attached Exhibit A [Memorandum]. Merchant attests that this memorandum advised inmates that certain items, including tattoo magazines, and photographs scanned from a computer, would not be delivered, accepted or processed by the mail room. Merchant further attests that the correspondence Plaintiff complains of contained photographs that appeared to be computer scanned, while the letter was from an inmate who has not been approved to correspond with the Plaintiff as required by Policy PS10. 08/18, 18.2.

Merchant attests that Policy PS10.08 provides that inmates are not permitted to correspond with other inmates, to include inmates outside of South Carolina, except under certain circumstances: the inmates are immediate family members, the inmates are in a joint legal action and the correspondence is related to the legal action only, or indigent inmate to inmate correspondence that has been approve. Merchant attests that Plaintiff met none of these exceptions, and that therefore the mail from the other inmate was not delivered to the Plaintiff because it violated policy.

Merchant attests that SCDC Policy PS10.08 5.5 provides in relevant part that inmates will be permitted to receive the following through the mail:

> 5.5.5 Photographs will be allowed, provided that none of them are sexually oriented, as outlined in Paragraph 6.1.6. Polaroid pictures will be allowed provided the entire backing is removed. Photographs that have been scanned from a computer will not be allowed. All photographs will be subject to the limitations in SCDC policy/procedure . . . . If an unauthorized number is received in one envelope, the entire correspondence will be returned per Section 6.



Merchant attests that Plaintiff's photographs did not comply with the policy as they appeared to be computer generated, and that even if they had complied with policy, they would not have been delivered to the Plaintiff since they came from another inmate.

With respect to magazine policy, Merchant attests that the PCI mail room keeps a running list of magazine approvals and disapprovals. The decision to approve a magazine to be received by inmates is made by the Correspondence Review Committee, which is made up of a representative from the General Counsel's office, a representative from Inmate Services, and a representative from Operation/Security. Merchant attests that mail room personnel are responsible for forwarding magazines containing questionable material to the CRC to be reviewed, and a list is published by the mail room at least monthly for the inmates' information, which list includes all magazines that have been sent to the CRC and are currently under review. Merchant attests that if a magazine is approved by the CRC, it is delivered to the inmate to whom it is addressed, but if the magazine is not approved, the inmate is issued S.C. Form 10-6 informing him that the magazine has been disapproved and will be returned to the sender. See also, Attached Exhibit D [S.C. Form 10-6].

Merchant attests that copies of notices to the inmates dated August 25, 2008, September 15, 2008, and September 30, 2008 are attached to her affidavit as Exhibit E, and that these notices include many of the magazines Plaintiff names in his complaint. Merchant attests that there is no SCDC Form 10-6 on file for Plaintiff regarding any of the magazines listed, and that Plaintiff would have received a Form 10-6 if the mail room had received a disapproved magazine addressed to the Plaintiff. See generally, Merchant Affidavit with attached Exhibits.

In opposition to the Defendants' evidence, Plaintiff has submitted an affidavit wherein he attests that on June 30, 2008 he received an SCDC Form 10-6 from the Defendant Merchant

4



"specifically and solely state[ing] that my incoming correspondence was being seized and denied my possession because it contained 'computer-scanned' photographs." Plaintiff attests that at no time did PCI mail room personnel or other SCDC officials notify him that this incoming correspondence was being seized because a letter was included with the photographs that was inmate to inmate correspondence. Plaintiff attests that he was unaware of this second reason for failure to deliver his mail until he received the Defendant's memorandum in support of summary judgment.

Plaintiff further attests that the letter that was included with the photographs was written by his biological daughter, Kerry Lucas Williams, and that therefore even if Plaintiff's daughter was in fact an inmate in Virginia when she mailed the letter, such correspondence would have been approved by SCDC policy for delivery to the Plaintiff. Plaintiff also states that the photographs determined to be computer scanned were in fact photocopies of photographs, and therefore did not violate any SCDC policy known to the Plaintiff.

With respect to receipt of magazines, Plaintiff acknowledges that no 10-6 notices were ever sent to him regarding withheld magazines, but Plaintiff attests that he has seen 10-6 notices received by other inmates who had identical magazine issues withheld and denied, and that Plaintiff has let several magazine subscriptions purchased by his family expire without renewal because he was denied delivery for unknown reasons. See generally, Plaintiff's Affidavit.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the



5

pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

Although a prisoner, Plaintiff does retain some First Amendment rights. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Witherow v. Paff, 52 F.3d 264, 265 (7th Cir. 1995)[Prisoners enjoy a First Amendment right to send and receive mail]. However, restrictions on the receipt of magazines and other publications by prisoners, as well as restrictions on the receipt of photographs, are routinely upheld when the policies at issue are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987) ["...when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penalogical interests"]; cf. Lasure v. Gore, No. 08-320, 2009 WL 1748718, at * 7 (D.S.C. June 19, 2009); Vasquez v. Frank, No. 05-528, 2005 WL 2740894 at *12 (W.D.Wisc. 2005) ["[R]estrictions on a[n] inmate's receipt of...photographs as part of an incentive program were reasonably related to the prison's legitimate interest in promoting good behavior"], aff'd in part, vacated in part (on other grounds), 2006 WL 3623044 (7th Cir. Dec. 13, 2006); Ramirez v. McCaughtry, No. 04-335, 2005 WL



2010173 (W.D.Wisc. 2005) [upholding policy that restricted access to newspapers, magazines, and photographs to inmates in segregation as part of an incentive system for good behavior]; see also Corey v. Reich, No. 02-2801, 2004 WL 3090234, aff'd, 2004 WL 1730327 (4th Cir. 2004), cert. denied, 544 U.S. 924 (2005); Incumaa v. Ozmint, C/A No. 0:03-2776-22BD; see also Beard v. Banks, 548 U.S. 521 (2006) [system of suspension of privileges valid means of attempting to control behavior]; Daigre v. Maggio, 719 F.2d 1310, 1313 (5th Cir. 1983)["To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already in prison. Left free to write to anyone in the world and to receive literature of any kind, a prisoner might find punitive isolation desirable, offering solitude and leisure as an alternative to the ordinary conditions of prison work and life. Thus, a narrower restriction on first amendment interests would likely prove ineffective in maintaining discipline"]; Gregory v. Auger, 768 F.2d 287, 290 (8th Cir. 1985) [restrictions on certain types of correspondence, including junk mail, newspapers and magazines serve a legitimate penological objective of "deterrence of future infractions of prison rules"]; Savko v. Rollins, 749 F.Supp. 1403, 1409 (D.Md. 1990) [Limitation on the amount of in-cell religious reading material contained in prison regulation is constitutional under Turner standards]; In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

      However, the Defendants in their motion do not argue a legitimate penological interest as the basis for the policies at issue. Rather, they confront Plaintiff's complaints by arguing that the



policies at issues are not cruel and unusual punishment in violation of the Eighth Amendment. As Plaintiff makes clear his response, he is not asserting an Eighth Amendment claim in this case. Rather, he is asserting a violation of his First Amendment rights. Hence, while the polices at issue may very well be constitutional based on the cited case law, as the Defendants have provided no evidence to show the reasons behind the polices at issue and how or why they serve a legitimate penological objective, the Defendants are not entitled to summary judgment on this claim at this time. See Rule 56, Fed.R.Civ.P. [moving party is only entitled to summary judgment if evidence shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law].

## II.

It is arguable that Plaintiff has also asserted a "due process" argument based on a claim that the grievance process he had to follow to exhaust his administrative remedies is somehow invalid or improper. However, to the extent Plaintiff is asserting a claim in his complaint that he was denied access to a proper grievance system, or that his grievances were improperly handled, the Defendants are entitled to summary judgment on this claim, as there is no constitutional right of access to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30,



2005). Therefore, to the extent Plaintiff has intended to include this complaint as one of his claims, it is without merit and should be dismissed.

### III.

Finally, Defendants assert that they are entitled to qualified immunity for Plaintiff's claims. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the Court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

Additionally, the Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harwell, 457 U.S. at 818. "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) . . . As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).

The question thus becomes whether, considering the facts and evidence in the light most favorable to the Plaintiff, there is a genuine issue of fact as to whether any Defendants' conduct violated a clearly establish statutory or constitutional right of which a reasonable person would have known.

Based on the case law previously cited in Section I of this Report and

9



Recommendation, supra, in particular those cases which have previously upheld restrictions on inmates' receipt of publications and photographs in the SCDC prison system; see Smith-El v. Steward, 33 Fed.Appx. 712, 717 (6th Cir. 2002)["Because a reasonable officer in [Defendant's] position had no reason to believe that the [mail] policy violated clearly established law, he is entitled to qualified immunity."]; Lavado v. Keohane, 992 F.2d 601, 607-608 (6th Cir. 1993); the undersigned concludes that the conduct at issue did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. Wiley, 14 F.3d at 995 ["[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity"]. Therefore, to the extent the Defendants seek summary judgment for any claims for monetary damages being asserted by the Plaintiff due to their enforcement of the polices set forth in Plaintiff's Complaint, the Defendants should be granted summary judgment on those claims.

## Conclusion

Based on the foregoing, it is recommended that, to the extent Plaintiff has intended to assert a "due process" claim relating to the prison grievance procedure, that claim should be **dismissed**. For the reasons stated, Plaintiff's claim for monetary damages against these Defendants should also be **dismissed** on the basis on qualified immunity, while Defendants' motion for summary judgment on Plaintiff's request for injunctive relief should be **denied**. If the Court adopts these recommendations, only Plaintiff's claim for injunctive relief will remain to be litigated. Wood v. Strickland, 420 U.S. 308, 314 n. 6 (1975) ["[I]mmunity from damages does not ordinarily bar equitable relief as well."].



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 9, 2011

Charleston, South Carolina



11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).