IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Martin Walter Lucas, #271076, ) | |
| ) | CIVIL ACTION NO. 9:10-0017-CMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Jon Ozmint, Director of the S. C. Dept. of ) | |
| Corrections; John Doe; Jane Doe; ) | |
| Timothy Riley, Acting Warden of Perry ) | |
| Correctional Institute; and Ms. Merchant, ) | |
| Mail Room Supervisor for Perry ) | |
| Correctional Institute, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 7, 2010. By Order filed March 22, 2011, this motion was denied without prejudice to Defendants' right to file a properly supported dispositive motion. Defendants thereafter filed a second motion for summary judgment on April 28, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on May 2, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.



After having received an extension of time to file a response, Plaintiff filed a memorandum in opposition to the Defendants' motion on August 22, 2011. The Defendants' motion is now before the Court for disposition.[1]

### Background and Evidence

Plaintiff alleges in his verified complaint[2] that on June 30, 2008, he was notified by the Defendant Merchant (mail room supervisor) that a decision had been made to withhold and restrict as contraband some of Plaintiff's mail because it contained alleged "computer scanned photographs" of the Plaintiff's children and grandchildren. Plaintiff alleges that he was advised that these photographs were unsuitable for inmate possession pursuant to SCDC policies PS-10-08, OP-22.03, and OP-22-35. Plaintiff alleges that these policies amount to "over broad mail censorship" which serve no legitimate and rational penologic interest. Plaintiff further alleges that as part of the grievance he thereafter pursued, he complained about being unable to subscribe to "innocuous over-the-counter publications from authorized publishers and venders", citing to such magazines as Maxim, GQ, Saltwater Sportsman, and Sports Illustrated. Finally, Plaintiff also complains about the role the "Publication Review Committee" plays in deciding what publications inmates can receive. Plaintiff seeks injunctive and/or declaratory relief, as well as a "compensation order". See generally, Plaintiff's Complaint, with attached exhibits [grievance documents].

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



In support of summary judgment in the case, the Defendant Nancy Merchant has submitted an affidavit wherein she attests that she works at the mail room at the Perry Correctional Institution (PCI), where Plaintiff is housed. Merchant attests that on April 18, 2008, she sent out a memorandum to inmates concerning changes in Policy PS-10.08 (Inmate Correspondence Privileges) effective May 1, 2008. See also, attached Exhibit A [Memorandum]. Merchant attests that this memorandum advised inmates that certain items, including tattoo magazines and photographs scanned from a computer, would not be delivered, accepted or processed by the mail room. Merchant further attests that the correspondence Plaintiff complains of contained photographs that appeared to be computer scanned, while the letter was from an inmate who has not been approved to correspond with the Plaintiff as required by Policy PS-10.08, § 5.5.5.

Merchant attests that Policy PS-10.08 provides that inmates are not permitted to correspond with other inmates, to include inmates outside of South Carolina, except under certain circumstances: the inmates are immediate family members, the inmates are in a joint legal action and the correspondence is related to the legal action only, or indigent inmate to inmate correspondence that has been approved. Merchant attests that Plaintiff met none of these exceptions, and that therefore the mail from the other inmate was not delivered to the Plaintiff because it violated policy. As for the photographs, Merchant attests that SCDC Policy PS-10.08, ¶ 5.5 provides in relevant part that inmates will be permitted to receive the following through the mail:

> 5.5.5 Photographs will be allowed, provided that none of them are sexually oriented, as outlined in Paragraph 6.1.6. Polaroid pictures will be allowed provided the entire backing is removed. Photographs that have been scanned from a computer will not be allowed. All photographs will be subject to the limitations in SCDC policy/procedure . . . . If an unauthorized number is received in one envelope, the entire correspondence will be returned per Section 6.



Merchant attests that Plaintiff's photographs did not comply with the policy as they appeared to be computer generated, and that even if they had complied with policy, they would not have been delivered to the Plaintiff since they came from another inmate.

With respect to magazine policy, Merchant attests that the PCI mail room keeps a running list of magazine approvals and disapprovals. The decision to approve a magazine to be received by inmates is made by the Correspondence Review Committee, which is made up of a representative from the General Counsel's office, a representative from Inmate Services, and a representative from Operation/Security. Merchant attests that mail room personnel are responsible for forwarding magazines containing questionable material to the CRC to be reviewed, and a list is published by the mail room at least monthly for the inmates' information, which list includes all magazines that have been sent to the CRC and are currently under review. Merchant attests that if a magazine is approved by the CRC, it is delivered to the inmate to whom it is addressed, but if the magazine is not approved, the inmate is issued S.C. Form 10-6 informing him that the magazine has been disapproved and will be returned to the sender. See also, Attached Exhibit D [S.C. Form].[3]

Merchant attests that copies of notices to the inmates dated August 25, 2008, September 15, 2008, and September 30, 2008 are attached to her affidavit as Exhibit E, and that these notices include many of the magazines Plaintiff names in his complaint. Merchant further attests, however, that there is no SCDC Form 10-6 on file for Plaintiff regarding any of the magazines listed, and that Plaintiff would have received a Form 10-6 if the mail room had received a disapproved magazine addressed to the Plaintiff. See generally, Merchant Affidavit with attached Exhibits.

---

[3]The copy of the form provided to the Court is actually Form 10-7, which deals with correspondence. However, Plaintiff does not dispute that Form 10-6 is also used by the prison.



The Defendants have also submitted an affidavit from Dennis Patterson, who attests that he is an operations coordinator with the SCDC and is a member of the Correspondence Review Committee (CRC). Patterson attests that CRC was established to review questionable correspondence and have one centrally located decision maker for issues relating to correspondence. Patterson further attests that pursuant to SCDC Policy/Procedure PS-10.08, ¶ 9.1, inmates may receive single copies of publications from a publisher or publications supplier, to include bookstores, while Paragraph 9.3 limits the amount of publications to those authorized by SCDC Policy/Procedure OP-22.03. SCDC Policy/Procedure OP-22.03, ¶ 8.1, allowing for up to ten books, magazines or photo albums for inmates in the general population participating in educational programs, jobs or work assignments, are who are on the waiting for the same. A copy of PS-10.08 is attached to Patterson's affidavit as Exhibit A, and a copy OP-22.03 is attached as Exhibit B.

Patterson attests that none of the magazines listed by the Plaintiff had been banned by the CRC, although these magazines would be examined on an individual basis as to each individual issue submitted. Patterson attests that pursuant to PS-10.08, ¶ 20, dealing with questionable correspondence, the CRC may determine that material contained in correspondence should be restricted, defined as procedures for the construction or use of weapons, ammunition, bombs or incendiary devices; maps, methods of escape from correctional facilities or blue prints, drawings or similar descriptions of SCDC institutions; procedures for the brewing of alcoholic beverages or the manufacture of drugs, poisons, intoxicants, corrosives, or other toxic or illegal substances; materials that advocate racial, religious or national hatred in such a way that could lead to the risk of physical violence or group disruption; encouragement or instruction in the commission of criminal activity; sexually explicit material, publications, or material that features nudity which



by its nature or content poses a threat to the security, good order, or discipline of the institution or which facilitates criminal activity; or nude or sexually suggestive photographs (individual prints or copies as opposed to those from publications). Patterson attests that if these materials were allowed into a correctional institution, it would severely threaten the security of that institution, would likely cause disagreements and incidents between inmates and between officers and inmates, and that these disruptions would overly tax already limited resources and personnel and would pose a danger to inmates, officers, and staff. Patterson further attests that there are not other alternatives to accomplish the goals sought by these policies.

Patterson attests that, in addition to the restrictions cited above for sexually oriented photographs, PS-10.08, ¶ 5.5.5 provides that photographs will be allowed as outlined in ¶ 6.1.6, although polaroid pictures must have the entire backing removed, and photographs that have been scanned from a computer will not be allowed. Patterson attests that an issue arose when inmates were photocopying or scanning multiple photographs onto one sheet and claiming that they were documents, not photographs, noting that inmates are restricted to ten (10) loose photographs. Patterson attests that this policy seeks to resolve that issue so that the interest in limiting inmate property to control and secure the environment is accomplished, and that when inmates possess an abundance of property, it hampers staff while conducting shakedowns of the cell, makes it more difficult to move an inmate and his property to another cell, and provides more opportunities and areas to hide contraband or weapons. Patterson attest that these concerns result in the greater use of prison resources; correctional officers spending additional time in their duties relating to shakedowns, moving inmates, and observing the institution for contraband or weapons; and would also pose a greater threat of danger to inmates, officers and staff; and that there are no less restrictive alternatives



for dealing with this issue. A copy of OP-22.35, ¶ 1.1.4, setting forth that unauthorized photographs, pictures or magazines are considered contraband, is attached to Patterson's affidavit as Exhibit C. See generally, Patterson Affidavit, with attached exhibits.

In opposition to the Defendants' evidence, Plaintiff has submitted an affidavit wherein he attests that on June 30, 2008 he received notification from the Defendant Merchant that his incoming correspondence had been seized because it contained computer-scanned photographs. Plaintiff further attests that, in her affidavit, Merchant declares "for the first time" that even if the photographs complied with the policy they would not have been delivered because the mail was inmate-to-inmate correspondence not permitted by Policy PS-10.08. However, Plaintiff attests that this same policy permits inmate-to-inmate correspondence between immediate family members, and that "Merchant was aware that correspondence she seized and restricted was from [Plaintiff's] daughter.[4] Plaintiff also attests that the photographs determined to be computer scanned were in fact photocopies of a "one of a kind" photograph, and therefore did not violate any SCDC policy.

Plaintiff also attests that, while incarcerated, he has had several magazine subscriptions purchased by his family, two of which may be classified as "adult" (Gallery and Playboy) and two of which are "unrated" (Maxim and FHM). While Plaintiff concedes that he never received an SCDC Form 10-6 Notice, Plaintiff states that he was aware that those magazines were being sent to the CRC "per his examination of other inmate's notices (Form 10-6) regarding the same issues," and that he had therefore also been denied delivery of these magazines for "unknown

---

[4] In an affidavit submitted by Plaintiff in opposition to the Defendants' first motion for summary judgment, Plaintiff notes that his daughter, Kerry Lucas Williams, was a prison inmate in Virginia, but contends that the fact that she is a family member trumps the inmate-to-inmate restriction in the policy. See Court Docket No. 28-1.



reasons". Plaintiff contends that his "fundamental first amendment rights" have been and continue to be violated by these "unconstitutional mail censorship polices, practices and procedures". See generally, Plaintiff's Affidavit.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

It is an unfortunate fact of life that prisons are dangerous places, both for the inmates themselves as well as for staff and visitors. As such, courts leave the management and policies of such institutions to the professionals whose job it is maintain order and safety. see In re Long Term



Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 132 (2003)["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"].

While Plaintiff, although a prisoner, does retain some First Amendment rights; see Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Witherow v. Paff, 52 F.3d 264, 265 (7th Cir. 1995)[Prisoners enjoy a First Amendment right to send and receive mail]; restrictions on the receipt of magazines and other publications by prisoners, as well as restrictions on the receipt of photographs, are routinely upheld when the policies at issue are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987) ["...when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"]; cf. Lasure v. Gore, No. 08-320, 2009 WL 1748718, at * 7 (D.S.C. June19, 2009); see also Montanye v. Haymes, 427 U.S. 236, 242 (1976) [if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"]; cf. Hoggard v. Dale, No. 05-110, 2005 WL 1771163 at ** 1-2 (E.D.Ark. July 12, 2005)[Finding Plaintiff's constitutional rights were not violated by a policy limiting prisoner to 5 photographs, and noting that policy had previously been upheld by that court and 8th Circuit Court of Appeals.], aff'd, 188 Fed.Appx. 538 (8th Cir. 2006); Jones v. Holladay, No. 09-876, 2010 WL



1052912 (E.D.Ark. Mar. 5, 2002), aff'd, 2010 WL 1052908 (E.D.Ark. 2010). None of the rules, polices or regulations at issue in this lawsuit violate Plaintiff's first amendment or due process rights when assessed pursuant to these applicable standards of review.

   First, it is clear from Plaintiff's own allegations that he is not being denied the right to access or to otherwise receive photographs. Rather, Plaintiff complains in his complaint that on or about June 30, 2008 he was denied access to certain alleged "computer scanned photographs". While Plaintiff may not agree with the policy prohibiting copied or scanned photographs, the Defendants have set forth a reasonable penological interest for this policy, and there is nothing unconstitutional about this requirement as applied to inmates such as the Plaintiff. Turner, 482 U.S. at 89 [Prison regulation valid if it is reasonably related to a legitimate penological interest]; see also White v. White, 886 F.2d 721, 723 (4th Cir. 1999)["Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations"]; cf. Jones, 2010 WL 1052912, at * 3-4.

   With respect to Plaintiff's complaint about the prison's magazine policy, it is again readily apparent that Plaintiff is allowed access to magazines and other types of publications under this policy. Further, Plaintiff has failed to present any evidence to show that he has even had any magazines withheld from him. Rather, Plaintiff claims that he is aware that *other inmates* have had certain magazines withheld from *them,* and that therefore even though he never received any SCDC Form 10-6 notices that any magazines sent to *him* had been disapproved, since (Plaintiff alleges) "several magazine subscriptions" had been purchased for him by his family, he must have had magazines withheld from him as well. See Plaintiff's Affidavit of August 15, 2011, at ¶ 6; Merchant Affidavit, ¶ ¶ 10, 12. This rank speculation is not evidence that Plaintiff has been denied receipt of any magazines. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's



conclusory allegations insufficient to maintain claim]; Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of constitutional right must be able to demonstrate "actual injury" caused by the policy or procedure at issue].  In any event, there is nothing unconstitutional about prison authorities reviewing the contents of incoming magazines to prisoners and restricting prisoner access to magazines (or portions thereof) containing prohibited materials or passages such as those identified by the Defendants.  See Patterson Affidavit, ¶ 5.  Cf. Mauro v. Arpaio, 188 F.3d 1054, 1057 (9th Cir. 1999)[county jail's regulation banning "sexually explicit materials," defined as "materials that show frontal nudity", was reasonably related to a legitimate penological purpose.]; Jones v. Salt Lake County, 503 F.3d 1147, 1152-1156 (10th Cir. 2007)[upholding a prohibition against sexually explicit material]; Dixon v. Cline, No 08-3078, 2008 WL 3285258 (D.Kan. Aug. 6, 2008)[upholding the rejection of King and XXL magazines because they contained partially bare buttocks, specifically females "in thong bikinis and boy shorts" in violation of prison regulations.]. Hence, Plaintiff has again failed to show a constitutional violation with respect to this claim. Overton, 539 U.S. at 131 [Noting that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration"].

      Finally, although not referenced in the allegations of his Complaint, in his affidavit submitted to the Court Plaintiff argues that a letter from his daughter was included with the seized scanned/copied photographs, and that it was improper for the Defendants to deny him this correspondence.  As indicated in one of Plaintiff's affidavits, Plaintiff's daughter is apparently herself a prison inmate in a Virginia prison.  However, in addition to this not being a claim asserted by Plaintiff in his Complaint, there is also no indication that Plaintiff ever referenced this issue in the



grievances he filed over the denial of his receipt of the photographs at issue. See Plaintiff's Verified Complaint, at p. 2, and attached Exhibits [Inmate Grievance Nos. PCI 1145-08]; see also Merchant Affidavit, ¶ ¶ 8-9, and attached Exhibits B and C; cf. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)[Prisoner may not file a lawsuit before exhausting his administrative remedies with respect to the claim being asserted]; Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"].[5]  Further, even if a prison policy did allow for the delivery of this letter, the violation of a prison policy is not itself a violation of the constitution. See Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

In any event, Plaintiff has provided no evidence to this Court to show that any letter accompanying the photographs at issue was from an immediate family member, or that (if it was) he

---

[5] Defendants have not, however, asserted this particular defect as a defense at this time. Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant].



ever provided any such proof to the prison as required by Policy PS-10.08. Further, SCDC Policy PS-10.08, § 5.5 specifically provides that if an authorized item is "received in one envelope, the entire correspondence will be returned per Section 6." That is what happened here. Therefore, Plaintiff's mere conclusory statement in his affidavit is insufficient to create a genuine issue of fact as to whether a constitutional violation occurred with respect to Plaintiff having failed to receive an alleged letter from a daughter, even assuming that Plaintiff had asserted this claim in his Complaint. See Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.[6]

The parties are referred to the Notice Page attached hereto.

                                                                                         Bristow Marchant
                                                                                         United States Magistrate Judge

September 15, 2011
Charleston, South Carolina

---

[6] Plaintiff also has a pending motion for certification of a class with respect to his claims. As the undersigned has concluded that Plaintiff's claims are without merit, it is further recommended that Plaintiff's motion for class certification also be **denied**.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).